United States District Court
Southern District of Texas
**ENTERED**
October 27, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| DEBRA MAE EDWARDS, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:25-cv-00261 |
| | § | |
| FREEDOM MORTGAGE CORPORATION, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendant's Motion to Dismiss Plaintiff's Complaint. Dkt. 8. I recommend that the motion be granted in part and denied in part.

## BACKGROUND

In 2019, Plaintiff Debra Edwards purchased a home at 13506 Mason Canyon Lane, Pearland, Texas 77584 (the "Property"). In September 2021, Edwards refinanced the purchase of the Property through Defendant Freedom Mortgage Corporation. In connection with the refinance, Edwards executed a promissory note dated September 21, 2021, in favor of Freedom Mortgage in the amount of $308,288.00. Edwards also executed a Deed of Trust, granting a security interest in the Property. Freedom Mortgage is the current beneficiary of the Deed of Trust.

In October 2021, Edwards lost her job. A short time later, Edwards requested a forbearance of her home loan under Freedom Mortgage's COVID-19 Forbearance Plan. Freedom Mortgage approved her participation in the plan, which began on November 1, 2021, and was extended through October 31, 2022. Edwards is a veteran of the United States Military. On August 1, 2022, Freedom Mortgage informed Edwards about the impending expiration of the Department of Veterans Affairs COVID-19 Partial Claim Payment Program ("VAPCP"). The Partial Claims Program helps eligible veterans get caught up on payments that

were missed during a COVID-19 Forbearance Plan. Freedom Mortgage explained to Edwards that she had until August 15, 2022, to apply to the VAPCP. Edwards insists that she completed a loss mitigation application for the VAPCP via phone on August 12, 2022. To be considered for the VAPCP, Edwards agreed to advance her forbearance exit date to August 15, 2022.

In a letter dated September 7, 2022, Freedom Mortgage informed Plaintiff that her loss mitigation application was incomplete and that she needed to provide certain financial documents no later than October 7, 2022. Edwards claims she talked to a Freedom Mortgage representative and provided the documentation requested by that representative by the October 7, 2022 deadline. By letter dated October 17, 2022, however, Freedom Mortgage informed Edwards that it had closed her loss mitigation application because it had not received the requested documentation. In a separate letter, also dated October 17, 2022, Freedom Mortgage informed Edwards that her loan was in default for failing to pay the monthly installments due on November 1, 2021, through October 1, 2022. Edwards contends that she did not receive the October 17, 2022 letters, thus giving her the impression that her loss mitigation application was still pending.

On November 22, 2022, Edwards applied for mortgage assistance through the Homeowner Assistance Fund ("HAF"). On November 25, 2022, Edwards claims that she learned that Freedom Mortgage was planning to foreclose on the Property when an appraiser contacted her to schedule an appraisal. That same day, Edwards avers that she talked to a Freedom Mortgage representative who acknowledged that Edwards should have been reviewed under the VAPCP, the additional documentation Freedom Mortgage had demanded was unnecessary, and her account should have been coded for loss mitigation, not foreclosure. Edwards claims that Freedom Mortgage assessed foreclosure attorney's fees and appraisal fees against her even though no foreclosure referral ever occurred and no appraisal was conducted.

On January 23, 2023, Edwards's HAF application was approved for $38,329.40 in assistance towards payment of her mortgage loan. Edwards maintains that those funds should have been applied to principal, interest, and escrow to bring her account current. Instead, Freedom Mortgage allegedly diverted HAF funds to pay unearned foreclosure and appraisal fees, delayed applying the HAF funds, and continued to assess late charges despite knowing that Edwards qualified to be deemed current.

Edwards also contends that she sent numerous Notices of Error ("NOEs"), Requests for Information ("RFIs"), and Qualified Written Requests ("QWRs") to Freedom Mortgage. According to Edwards, Freedom Mortgage issued cursory, contradictory, or factually incorrect responses, and failed to provide documents requested and correct clear servicing errors.

Edwards sued Freedom Mortgage, alleging causes of action for (1) violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617, and its implementing regulations, known as Regulation X, 12 C.F.R. §§ 1024.1–1024.41; (2) violations of the Texas Debt Collection Act ("TDCA"); (3) breach of contract; (4) defamation; (5) negligence; and (6) gross negligence. *See* Dkt. 1 at 36–55. Freedom Mortgage seeks to dismiss Edwards's lawsuit under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. 8.

## LEGAL STANDARD

A defendant may move to dismiss a complaint when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Conversely, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (cleaned up).

When evaluating a Rule 12(b)(6) motion, I accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 675 (5th Cir. 2020) (quotation omitted). I "do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Benfield v. Magee*, 945 F.3d 333, 336–37 (5th Cir. 2019) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### A. RESPA

Congress enacted RESPA in 1974 "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). Regulation X was issued to implement RESPA. Edwards alleges that Freedom Mortgage violated various Regulation X provisions. In seeking dismissal, Freedom Mortgage raises several arguments. I will address each in turn.

#### *1. Private Right of Action*

Freedom Mortgage first argues that Edwards's claims for violations of 12 C.F.R. §§ 1024.35, 1024.38, and 1024.39 should be dismissed because there is no private right of action to enforce such regulations. *See* Dkt. 8 at 5.[1]

[1] Edwards also asserts a claim under § 1024.41, which expressly provides for private enforcement through 12 U.S.C. § 2605(f). *See* 12 C.F.R. § 1024.41(a). Freedom Mortgage

**Section 1024.35.** Section 1024.35 requires mortgage servicers to investigate and correct errors regarding the servicing of a borrower's loan. Although the Fifth Circuit has not addressed whether a private right of action exists for a violation of § 1024.35, numerous courts across the nation have examined the issue. The outcomes have been mixed. *Compare Jones v. SN Servicing Corp.*, No. 4:24-cv-00060, 2026 WL 806862, at *8–9 (E.D. Tex. Jan. 30, 2026) (finding no private right of action under § 1024.35), *and Vallier v. Nationstar Mortg., LLC*, No. CV H-17-0998, 2018 WL 1319166, at *5 (S.D. Tex. Feb. 1, 2018) (same), *with Huyghe v. Nationstar Mortg., LLC*, No. 2:24-cv-02276, 2026 WL 1803497, at *3 (D. Nev. June 22, 2026) (collecting cases and holding that § 1024.35 "is enforceable through a private right of action"), *and In re Coppola*, 596 B.R. 140, 153 (Bankr. D.N.J. 2018) (same). The one circuit court to squarely address the availability of a private cause of action under § 1024.35 has found that such a right exists. *See Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016) ("If the servicer fails to respond adequately to the borrower's notice of error, then the borrower has a private right of action to sue the servicer [for a violation of § 1024.35] under RESPA.").

Unfortunately, most of the courts addressing whether a private right of action exists under § 1024.35 fail to offer any substantive analysis. I am thankful for a few decisions that have explored this issue in great depth. *See Mohamed v. Nationstar Mortg., LLC*, No. 20-cv-0216, 2024 WL 4132351, at *3–4 (E.D.N.Y. Sep. 10, 2024); *Lucas v. New Penn Fin., LLC*, No. 17-cv-11472, 2019 WL 404033, at *4 (D. Mass. Jan. 31, 2019). After reviewing the relevant statutory and regulatory provisions, as well as the applicable case law, I find that there is a private right of action for a violation of § 1024.35.

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286

---

does not challenge the sufficiency of that claim. Accordingly, Edwards's § 1024.41 claim survives this motion.

(2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* Additionally, where a statute creates a private right of action, a plaintiff may sue for violations of federal regulations that "authoritatively construe the statute itself." *Id.* at 284.

Section 6 of RESPA provides a general authorization for private enforcement. It states that anyone who "fails to comply with any provision of this section shall be liable to the borrower for each such failure." 12 U.S.C. § 2605(f). This statutory provision supports the existence of a private cause of action for violations of § 1024.35. The Consumer Financial Protection Bureau ("CFPB") promulgated § 1024.35 under the authority of RESPA § 6. *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10737 (Feb. 14, 2013) (to be codified at 12 C.F.R. pt. 1024). RESPA § 6(j)(3) grants the CFPB authority to "establish any requirements necessary to carry out this section." 12 U.S.C. § 2605(j)(3).

Although § 1024.35 does not reference a private right of action, the CFPB has observed "that regulations established pursuant to section 6 of RESPA are subject to [12 U.S.C. § 2605(f)], which provides borrowers a private right of action to enforce such regulations." Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. at 10714 n.64. "Because 12 C.F.R. § 1024.35 was promulgated pursuant to section 6 of RESPA, I reject [Freedom Mortgage's] argument that there is no private right of action thereunder." *Ramirez v. Wells Fargo Bank, N.A.*, No. 1:19-cv-05074, 2021 WL 9564023, at *5 (E.D.N.Y. Mar. 24, 2021). I thus hold that RESPA provides a private right of action for violations of § 1024.35.

**Section 1024.38.** Section 1024.38 requires mortgage servicers to investigate and correct errors regarding the servicing of a borrower's loan. Unlike § 1024.35, which was established pursuant to § 6 of RESPA, § 1024.38 was not promulgated under that statutory scheme. The preamble to § 1024.38 makes clear

that the CFPB "adopt[ed] § 1024.38 pursuant to its authority under section 19(a) of RESPA," codified at 12 U.S.C. § 2617(a), as well as §§ 1021, 1022, and 1032 of the Dodd-Frank Act, codified at 12 U.S.C. §§ 5511, 5512, and 5532, respectively. Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. at 10779. "None of these sections permit private enforcement of 12 C.F.R. § 1024.38. Each grants broad rulemaking authority to the CFPB and lacks any indication that Congress intended to create a private right of action." *Moore v. Rocket Mortg., LLC*, No. 2:26-cv-01854, 2026 WL 2323201, at *2 (E.D. Cal. Aug. 11, 2026). "In fact, the CFPB intentionally and explicitly promulgated [§ 1024.38] pursuant to these sections in order to prevent its enforcement through private suits." *Id.* at *3.

> [Section 1024.38] was to be promulgated pursuant to section 6 of RESPA. Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. at 10778. However, "[u]ltimately, the Bureau agree[d] with the commenters that allowing a private right of action for the provisions that set forth general servicing policies, procedures, and requirements would create significant litigation risk." *Id.* Accordingly, the preamble to 12 C.F.R. § 1024.38 explained, "the Bureau is restructuring the final rule" so that it does not "provide[] private liability for violations of § 1024.38." *Id.* at 10779. "Thus, the Bureau no longer relie[d] on its authorities under section 6 of RESPA to issue § 1024.38" and instead promulgated this regulation pursuant to the provisions identified above. *Id.*

*Moore*, 2026 WL 2323201, at *3. Following this line of reasoning, most district courts to consider whether § 1024.38 establishes a private right of action have held that it does not. *See id.* (collecting cases). I adopt that approach as well. As a result, I recommend that Edwards's claims under § 1024.38 be dismissed.

**Section 1024.39.** Section 1024.39 requires mortgage servicers to provide timely information regarding loss mitigation options. To date, the Fifth Circuit has declined to decide whether a private right of action exists for a violation of § 1024.39. *See Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 n.16

(5th Cir. 2016) ("Because Gresham has failed to support his claim with any facts, we need not reach the issue of whether a private right of action could be available under Section 1024.39.").

Conducting the same type of analysis as I have done for §§ 1024.35 and 1024.38 leads to the inescapable conclusion that § 1024.39 provides a private right of action. "[T]he regulatory history of § 1024.39 shows that it was the intent of the [CFPB] in enacting § 1024.39 under the authority of RESPA § 6 to create a private right of action to enforce the regulation." *Canizales v. Wolf Firm*, No. CV 22-00208, 2022 WL 1585180, at *3 (C.D. Cal. Apr. 20, 2022). As one court explained:

> The CFPB initially "proposed to implement § 1024.39 pursuant to authority under" RESPA § 6 with the knowledge that "[v]iolations of section 6 of RESPA are subject to a private right of action." Mortgage Servicing Rules Under the Real Estate Settlement Act (Regulation X), 78 Fed. Reg. 10,696, 10,790 (Feb. 14, 2013) (to be codified at 12 C.F.R. pt. 1024). During the notice and comment period, industry commenters disclosed their concern that a private right of action could create negative impacts. *Id.* Thus, commenters requested that § 1024.39 solely rely on RESPA § 19(a) authority, which does not contain a private right of action. *Id.* Nonetheless, after considering the industry comments, the CFPB adopted § 1024.39 under the authority of RESPA § 6. *Id.* ("[T]he Bureau has taken steps to clarify requirements in [§ 1024.39], which the Bureau believes will . . . help minimize litigation risk and compliance costs arising from a private right of action associated with RESPA section 6."). The Court agrees . . . that this shows an intent for § 1024.39 to create a private right of action under the authority of RESPA § 6.

*Canizales*, 2022 WL 1585180, at *4 (cleaned up); *see also Vance v. Wells Fargo Bank, N.A.*, 291 F. Supp. 3d 769, 773 (W.D. Va. 2018) ("Because the [CFPB] promulgated Section 1024.39 under the authority of RESPA [§] 6 and [§] 6 confers a private right of action, [§] 1024.39 authorizes a private right of action.").

I recognize that "[§] 1024.39 does not explicitly convey a private right of action to borrowers." *Gresham*, 642 F. App'x at 359. I also realize that most courts to tackle this issue have concluded that § 1024.39 does not provide a private right

of action. But "none of these cases have provided convincing analysis to support the conclusion that there was no intent to confer a private right of action." *Canizales*, 2022 WL 1585180, at *3. I agree with those courts who, after conducting a detailed study of the legislative history, have found "that there was clear intent to create a private right of action to enforce § 1024.39." *Id.*; *see also Vance*, 291 F. Supp. 3d at 773.

***2. Statute of Limitations***

Freedom Mortgage next argues that Edwards's RESPA claim is barred by a one-year statute of limitations to the extent her claim is based on a purported violation of the Truth in Lending Act ("TILA"). This argument has no legs.

RESPA imposes either a one-year or a three-year statute of limitations depending on the violation alleged. *See* 12 U.S.C. § 2614 (prescribing a one-year statute of limitations for violations of §§ 2607 and 2608 and a three-year statute of limitations for violations of § 2605). Section 2605 covers required disclosures and notices, § 2607 includes prohibitions against kickbacks and unearned fees, and § 2608 prohibits a seller from requiring that title insurance be purchased by the buyer from any particular title company. Edwards does not bring a TILA claim. Her RESPA claims are all premised on Freedom Mortgage, as a loan servicer, misapplying payments, misapplying HAF Funds, and refusing to correct these errors after receiving NOEs. These allegations are governed by a three-year statute of limitations. Because all of Edwards's claims relate to activity within three years of this lawsuit being filed, the statute of limitations does not bar Edwards from proceeding with this case.

***3. Sufficiency of §§ 1024.35 and 1024.36 Claims***

Freedom Mortgage argues that Edwards's claims based upon §§ 1024.35 and 1024.36[2] should be dismissed for failure to state a claim.

---

[2] Freedom Mortgage has not challenged whether a private right of action exists under § 1024.36.

Section 1024.35 requires mortgage servicers to reasonably respond to notices of error. A servicer must respond by fixing the error, crediting the borrower's account, and notifying the borrower, or by concluding that there is no error based on a reasonable investigation and then explaining that conclusion in writing to the borrower. *See* 12 C.F.R. § 1024.35(e)(1)(i). A mortgage servicer must "provide to the borrower, at no charge, copies of documents and information relied upon by the servicer in making its determination that no error occurred within 15 days . . . of receiving the borrower's request for such documents." *Id.* § 1024.35(e)(4).

Section 1024.36 requires mortgage servicers to reasonably respond to requests for information. In a nutshell, a servicer must "[c]onduc[t] a reasonable search for the requested information" and either provide the borrower with the requested information or "provid[e] the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer," the basis for the servicer's determination, and contact information. 12 C.F.R. § 1024.36(d)(1).

Edwards alleges that she sent multiple letters to Freedom Mortgage that constitute notices of error under § 1024.35 or requests for information under § 1024.36. Edwards contends that "Freedom Mortgage failed to provide [her] with complete responses to each of [her] Requests for Information and Notices of Error and further failed to provide all of the information requested in each letter." Dkt. 1 at 42. Freedom Mortgage argues that the §§ 1024.35 and 1024.36 claims fail because Edwards "alleges only that Freedom Mortgage did not produce documentation, not that it failed to respond at all or failed to conduct a reasonable investigation." Dkt. 8 at 6–7. I disagree.

The relevant regulatory provisions do not solely require Freedom Mortgage to respond to notices of error and requests for information. They also impose an obligation on Freedom Mortgage to produce requested documentation. *See* 12 C.F.R. § 1024.35(e)(4); *id.* § 1024.36(d)(1)(i). Edwards has stated a claim that

Freedom Mortgage failed to provide requested documentation and conduct a reasonable investigation. *See Saint-Fleur v. JPMorgan Chase Bank, N.A.*, No. 15-cv-61110, 2015 WL 12860295, at *3 (S.D. Fla. Oct. 14, 2015) ("The Court has reviewed the allegations and documentation and determines that, rather than Plaintiff merely being dissatisfied with [defendant]'s response to his query, Plaintiff did not receive the information he requested."). I thus recommend that Freedom Mortgage's request to dismiss the §§ 1024.35 and 1024.36 claims be denied.

#### *4. Damages*

RESPA permits recovery for "any actual damages to the borrower." 12 U.S.C. § 2605(f)(1)(A). RESPA also allows for the imposition of statutory damages, which cannot exceed $2,000, if a plaintiff establishes a "pattern or practice of noncompliance with the requirements" of § 2605. *Id.* § 2605(f)(1)(B). Freedom Mortgage contends that Edwards does not adequately allege entitlement to either actual or statutory damages under RESPA. *See* Dkt. 8 at 8–10.

**Actual Damages.** District courts often dismiss "complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff." *Corazzini v. Litton Loan Servicing LLP*, No. 09-cv-199, 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010) (quotation omitted). This is not such a case. Here, Edwards alleges that she

> has suffered actual damages, including loss of income, loss of opportunity to use funds to which she is entitled, increased direct monthly mortgage payments, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of [Freedom Mortgage's] willful violations of RESPA.

Dkt. 1 at 41–42, 45. In opposing the motion to dismiss, Edwards explains that Freedom Mortgage's "deficient responses to [her] Notices of Error forced [her] to incur the additional time and expense of sending additional RESPA correspondence." Dkt. 18 at 22 (citing Dkt. 1 at 29). She adds: "The expenses relating to each additional round of RESPA correspondence were made necessary

by [Freedom Mortgage's] deficient initial response and thus constitute [actual] damages under RESPA." Dkt. 18 at 22. At this juncture, Edwards's actual damage allegations are sufficient to survive dismissal. *See Green v. FCI Lender Servs., Inc.*, No. 4:22-cv-00038, 2022 WL 23081467, at *6 (N.D. Tex. Nov. 22, 2022) ("[A]ttorney's fees and costs associated with disputing FCI's actions *before the commencement of litigation* are actual damages so long as they were incurred as a result of FCI's RESPA violations.").

**Statutory Damages.** Freedom Mortgage argues that Edwards has failed to sufficiently allege that Freedom Mortgage engaged in a "pattern or practice of noncompliance" that would entitle her to an award of statutory damages. 12 U.S.C. § 2605(f)(1)(B); *see* Dkt. 8 at 9–10. "[T]he plain meaning of the words 'pattern or practice of noncompliance with [12 U.S.C. § 2605],' read in context, require RESPA plaintiffs to show that the defendant has repeatedly violated § 2605." *Akkus v. Rocket Mortg., LLC*, 715 F. Supp. 3d 726, 732 (D. Md. 2024) (quoting 12 U.S.C. § 2605(f)(1)(B)).

Edwards alleges that Freedom Mortgage failed to adequately respond to more than 10 written requests from her. Edwards further claims that since January 2022, the CFPB has collected approximately 2,308 consumer complaints against Freedom Mortgage. *See* Dkt. 1 at 41. Together, these allegations are sufficient to allege a claim for statutory damages under RESPA. *See Obazee v. Bank of New York Mellon*, No. 3:15-cv-1082, 2015 WL 8479677, at *3 (N.D. Tex. Dec. 10, 2015) (finding allegations of several lawsuits against defendant for alleged RESPA violations and over 1,400 consumer complaints sufficient to state a claim for statutory damages).

* * *

In sum, Edwards has stated a plausible claim for actual and statutory damages under RESPA.

## B. TEXAS DEBT COLLECTION ACT (TDCA)

Edwards asserts that Freedom Mortgage violated §§ 392.303(a)(2) and 392.304(a)(8) of the TDCA. In seeking dismissal of the TDCA claim, Freedom Mortgage argues that Edwards has not alleged any wrongdoing that would violate the TDCA and that even if she did, such a claim would be barred by the economic loss rule.

### *1. The Economic Loss Rule*

I will start with Freedom Mortgage's contention that Edwards's TDCA claims are barred by the economic loss rule. The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). Freedom Mortgage's reliance on the economic loss rule is misplaced.

The Fifth Circuit has held that the economic loss rule does not preclude claims based on TDCA violations:

> If [Freedom Mortgage] violated the TDCA, it can be held liable for those violations even if there are contracts between the parties, and even if [Freedom Mortgage]'s prohibited conduct also amounts to contractual breach. A statutory offender will not be shielded from liability simply by showing its violation also violated a contract.
>
> Indeed, the TDCA contemplates that there will often be contractual duties running between a consumer and debt collector, and a debt collector's otherwise wrongful conduct may be permissible if authorized by contract. *See, e.g.*, Tex. Fin. Code § 392.301(b)(3) (providing that debt collectors are not prevented from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings"); § 392.303(a)(2) (prohibiting debt collectors from collection or attempted collection of certain charges "unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation"). Permitting debt collectors to cast the absence of a contractual right as a mere contractual breach triggering the economic loss rule would fundamentally disrupt the statutory scheme.

> . . . .
>
> The economic loss rule does not bar [Edwards's] TDCA claims.

*McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015); *see also Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 831 (5th Cir. 2015) (holding "that the economic-loss rule does not bar TDCA claims"). Tellingly, Freedom Mortgage fails to address the Fifth Circuit's unequivocal holdings in *McCaig* and *Rucker* that the economic loss rule does not preclude TDCA claims. Since those 2015 Fifth Circuit cases, district courts have, unsurprisingly, uniformly rejected efforts to dismiss TDCA claims based on the economic-loss rule. *See, e.g.*, *Hasty v. Flagstar Bank*, 3:23-cv-114, 2024 WL 2243299, at *5 (S.D. Tex. Jan. 24, 2024); *Helms v. US Bank Nat'l Ass'n*, 6:14-cv-11, 2015 WL 5829649, at *7–8 (E.D. Tex. Oct. 1, 2015). The result should be the same here.

***2. Section 392.303(a)(2)***

Turning to the specific provisions of the TDCA at issue, Edwards first claims that Freedom Mortgage violated § 392.303(a)(2). That section provides:

> (a) In debt collection, a debt collector may not use unfair or unconscionable means that employ the following practices:
>
> . . . .
>
> (2) collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer[.]

Tex. Fin. Code Ann. § 392.303(a)(2). "Section 392.303(a)(2) prohibits mortgage servicers from attempting to assess fees when such fees are not authorized by the [deed of trust]; it does not create a cause of action to challenge assessed fees as unreasonable." *Rucker*, 806 F.3d at 832.

Freedom Mortgage argues that Edwards has failed to state a § 392.303(a)(2) claim because the fees she challenges as unfair and unconscionable—legal fees, appraisal fees, and late fees—were authorized by the deed of trust. To the contrary, Edwards contends that the Deed of Trust does not

authorize Freedom Mortgage to assess "fees and expenses that were never incurred." Dkt. 1 at 47. Although general assertions of "wrongful charges" are insufficient to state a claim under § 392.303(a)(2) because they are conclusory in nature, Edwards has done much more than that. *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 240 (5th Cir. 2014). She has identified specific wrongful charges that Freedom Mortgage allegedly imposed. For example, Edwards alleges that Freedom Mortgage violated § 392.303(a)(2) by assessing:

- "legal fees and appraisal expenses that were never performed and should not have been authorized";
- "late fees when there were sufficient unapplied funds to pay a monthly mortgage payment but Freedom Mortgage failed to apply same";
- "late fees after Freedom Mortgage misappropriated [Homeowner Assistance Funds] intended for the payment of Ms. Edwards' past due interest and principal and instead applied them to unlawful and unaccrued foreclosure fees and appraisal"; and
- "late fees after [Freedom Mortgage] failed to assess Ms. Edwards' account for wind insurance premiums timely."

Dkt. 1 at 46. Because Edwards has plausibly alleged that Freedom Mortgage violated § 392.303(a)(2), Freedom Mortgage's motion to dismiss this statutory claim should be denied.

***3. Section 392.304(a)(8)***

Edwards next alleges that Freedom Mortgage violated § 392.304(a)(8). That section prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt." Tex. Fin. Code Ann. § 392.304(a)(8). To state a § 392.304(a)(8) claim, Edwards must allege that Freedom Mortgage "made a misrepresentation that led her to be unaware (1) that she had a mortgage debt, (2) of the specific amount she owed, or (3) that she had defaulted." *Rucker*, 806 F.3d at 832. Edwards alleges that the charges imposed were incorrect and that Freedom Mortgage made misrepresentations about those charges. By way of example, Edwards complains that Freedom Mortgage made misrepresentations:

- "when it sent Ms. Edwards mortgage statements and escrow statements which misrepresented the amounts owed by Ms. Edwards on her mortgage loan, specifically as to the unlawful and inaccurate foreclosure fees and appraisal expenses"; and
- "by representing that a consumer debt may be increased by the addition of attorney's fees, service fees or other charges if a written contract or statute does not authorize the additional fees or charges."

Dkt. 1 at 46–47. These allegations pass muster at this early pleading stage. I thus hold that Edwards has stated a plausible claim under § 392.304(a)(8).

### C. BREACH OF CONTRACT

To state a breach of contract claim under Texas law, Edwards must allege four elements: "(1) formation of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) the plaintiff sustained damages as a result of the breach." *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (quotation omitted).

Freedom Mortgage contends that Edwards's breach of contract claim fails for two independent reasons. First, Freedom Mortgage argues that Edwards has failed to plausibly allege that it breached the Deed of Trust, the contract at issue. Second, Freedom Mortgage avers that Edwards cannot proceed with a breach of contract claim because she was in default of the Deed of Trust.

As for the sufficiency of the breach of contract allegations, Edwards has done enough to nudge her breach of contract claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Edwards alleges that the Deed of Trust "provides that the lender must apply full payments to interest, then principal, then valid escrow items." Dkt. 1 at 48. Edwards claims that "Freedom Mortgage applied Ms. Edwards' HAF funds and mortgage payments not to principal, interest, and escrow as received, but . . . instead misapplied [those funds] to cover wrongful, improper foreclosure fees and expenses which were never incurred." *Id.* Edwards

also provides specifics on the particular fees and charges that she maintains were improperly applied.

Turning to Freedom Mortgage's second argument, the general rule under Texas law is that "a party to a contract who is himself in default cannot maintain a suit for its breach." *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (quotation omitted). Edwards acknowledges the general rule and does not dispute that she was in default for failing to make payments at the time of Freedom Mortgage's alleged default. Edwards's position is that her breach was not material, and that "one party's breach does not excuse the other's performance unless the breach is material." *Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750, 755 (Tex. 2013); *see also In re Trevino*, 535 B.R. 110, 155 (Bankr. S.D. Tex. 2015) ("This strict rule [that a party to a contract who is in default cannot maintain a suit for its breach] has been ameliorated, however, by the concept of a material breach.").

Because determining whether a party's breach is material is ordinarily a question of fact, Edwards argues that her breach of contract claim should withstand the pleading stage. After reviewing the complaint, it is not clear to me the extent of Edwards's breach at the time of Freedom Mortgage's alleged breach. Given that uncertainty, the correct course is to allow Edwards to proceed with her breach of contract claim and revisit the issue at summary judgment.

**D. DEFAMATION**

To state a defamation claim under Texas law, Edwards must allege: (1) publication of a false statement of fact to a third party; (2) that was defamatory concerning her; (3) with the requisite degree of fault; and (4) that proximately caused damages. *See Anderson v. Durant*, 550 S.W.3d 605, 617–18 (Tex. 2018).

Edwards alleges: "Freedom Mortgage furnished false information regarding Ms. Edwards, her payment history, and the status of Ms. Edwards' mortgage loan account to the credit reporting agencies that Freedom Mortgage intended to be published through the credit reporting agencies." Dkt. 1 at 49. Freedom Mortgage argues that this claim should be dismissed because Edwards "cannot demonstrate

that Freedom Mortgage misreported that her Loan was in default to the credit reporting agencies." Dkt. 8 at 14.

At the motion to dismiss stage, I must credit the allegations in Edwards's operative complaint. She alleges that Freedom Mortgage failed to apply funds appropriately, that she should not have been considered in default, and Freedom Mortgage falsely represented to the credit reporting agencies that she was in default. These allegations, taken as true, are sufficient to plausibly allege a defamation claim. *See Thelander v. Equifax Info. Servs. LLC*, No. 3:14-cv-2650, 2014 WL 12596971, at *5 (N.D. Tex. Dec. 18, 2014) (holding that plaintiff's lawsuit sufficiently stated a claim for defamation to survive defendants' motion to dismiss where plaintiff alleged that credit reporting agencies "reported false information sent to them by [defendants], and all of this information was known to be false").

### E. NEGLIGENCE AND GROSS NEGLIGENCE

Edwards brings both negligence and gross negligence claims against Freedom Mortgage. Freedom Mortgage argues that these claims should be dismissed because Edwards alleges no facts establishing that Freedom Mortgage owed a legal duty to her.

"A cause of action for negligence in Texas requires three elements. There must be a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *D. Hou., Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). "[A] finding of ordinary negligence is a prerequisite to a finding of gross negligence." *Hall v. Stephenson*, 919 S.W.2d 454, 467 (Tex. App.—Fort Worth 1996, writ denied).

Edwards alleges that Freedom Mortgage owed her a duty to exercise reasonable care, and breached that duty by

- "failing to consider Ms. Edwards for the VAPCP after she timely applied for this program on August 12, 2022";
- "failing to consider Ms. Edwards' complete loss mitigation application submitted in October of 2022";

- "failing to make adjustments promptly to Ms. Edwards' mortgage loan account to eliminate the unlawful foreclosure fees and appraisal fees which were not actually incurred, and by not promptly applying unapplied funds, and by not promptly removing all late fees resulting from Freedom Mortgage's own mishandling of Ms. Edwards' loan account"; and
- "reporting Ms. Edwards as [sic] delinquent on her mortgage loan in 2023, when the only reason that Ms. Edwards was 'delinquent' was because of Freedom Mortgage's own mishandling of Ms. Edwards' loss mitigation applications and its misapplication of HAF funds to pay fees and expenses which were not actually incurred."

Dkt. 1 at 52–53.

The facts on which Edwards relies to establish a legal duty all concern Freedom Mortgage's servicing of her mortgage, which does not create an independent tort duty. Indeed, it is well-established that loan servicers do not owe general duties of care to borrowers. *See, e.g.*, *Milton v. U.S. Bank Nat'l Ass'n*, 508 F. App'x 326, 329 (5th Cir. 2013) (affirming dismissal of negligence claims against mortgage servicer "because, under Texas law, there is no special relationship between a mortgagor and mortgagee that would give rise to a stand-alone duty of good faith and fair dealing" (quotation omitted)); *Holland v. Fed. Nat'l Mortg. Ass'n*, No. 4:25-cv-03004, 2026 WL 2458671, at *5 (S.D. Tex. May 15, 2026) ("[U]nder Texas law, a mortgage servicer does not owe a common law duty of care to a borrower."); *Lerma v. CitiMortgage, Inc.*, No. 6:13-cv-56, 2014 WL 12599346, at *1 (S.D. Tex. Apr. 17, 2014) ("[A] mortgage servicer does not owe a duty that would support . . . [a] negligence claim."). Accordingly, I recommend that Edwards's negligence and gross negligence claims be dismissed.

## CONCLUSION

For the reasons discussed above, I recommend that Freedom Mortgage's motion to dismiss be granted with respect to Edwards's claims under 12 C.F.R. § 1024.38 and her claims for negligence and gross negligence. In all other respects, I recommend the motion be denied.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 27th day of October 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE